UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTELLICHECK MOBILISA, INC., | CASE NO. C15-0366JLR |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO PARTIALLY DISMISS THE AMENDED COMPLAINT AND GRANTING LEAVE TO AMEND |
| v. | |
| WIZZ SYSTEMS, L.L.C., | |
| Defendant. | |

## I.   INTRODUCTION

Before the court is Defendant Wizz Systems, L.L.C., d/b/a IDScan.net's

("IDScan"), motion to partially dismiss Plaintiff Intellicheck Mobilisa, Inc.'s

("Intellicheck"), amended complaint.  (Mot. (Dkt. # 21); *see* Am. Compl. (Dkt. # 16).)

IDScan seeks dismissal of Intellicheck's claims for indirect patent infringement under

Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot. at 2.)  Intellicheck opposes the

motion.  (*See* Resp. (Dkt. # 24); *see also* Reply (Dkt. # 25).)  The court has considered

the motion, all submissions filed in support of and opposition to the motion, the balance

ORDER- 1

1    of the record, and the relevant law.  Being fully advised,[1] the court GRANTS the motion

2    in part and DENIES it in part, DISMISSES Intellicheck's contributory infringement

3    claims without prejudice, and GRANTS Intellicheck ten days within which to amend

4    those claims.

5                    **II.    BACKGROUND**

6         This case involves allegations of patent infringement.  Intellicheck is a wireless

7    technology company that provides "wireless technology and identity systems for various

8    applications, including patented technology that instantly reads, analyzes, and verifies

9    encoded data in magnetic stripes and barcodes on government-issued IDs."  (Am. Compl.

10   ¶ 3.)  Intellicheck is the owner by assignment of United States Patent No. 5,864,623 ("the

11   '623 Patent"), United States Patent No. 6,463,416 ("the '416 Patent"), United States

12   Patent No. 6,920,437 ("the '437 Patent"), United States Patent No. 7,478,067 ("the '067

13   Patent"), and United States Patent No. 7,899,751 ("the '751 Patent") (collectively, "the

14   Patents-in-Suit").  (*Id.* ¶¶ 1, 10-11, 19-20, 28-29, 37-38, 46-47, Exs. A-E.)  Intellicheck

15   alleges that IDScan directly infringes those patents and also induces and contributes to

16   infringement by others.  (*See id.* ¶¶ 12-14, 21-23, 30-32, 39-41, 48-50.)

17        Intellicheck filed its initial complaint on March 11, 2015, raising claims for direct

18   and indirect infringement.  (*See* Compl. (Dkt. # 1).)  On May 13, 2015, IDScan filed a

19   motion to dismiss the original complaint's indirect infringement claims.  (*See* 1st MTD

20   (Dkt. # 14) at 1-3.)  Before responding to that motion, Intellicheck filed an amended

21

22        [1] Neither party has requested oral argument, and the court deems oral argument
     unnecessary for the disposition of this motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1   complaint, again alleging direct and indirect infringement.  (*See* Am. Compl.)  IDScan

2   filed the instant motion to dismiss on July 24, 2015.  (*See* Mot. at 1.)  IDScan argues that

3   the court should dismiss the indirect infringement claims with prejudice because

4   Intellicheck has failed to plead sufficient facts.  (*See id.* at 2-3.)

5          Intellicheck's allegations regarding indirect infringement are identical in all

6   relevant respects for each of the five Patents-in-Suit.  With respect to its induced

7   infringement claims, Intellicheck alleges,

8          Defendant has been and is inducing infringement of the [Patents-in-Suit] by
       actively and knowingly inducing others to make, use, sell, offer for sale, or
9          import products such as Veriscan, Veriscan Online, Uniscan Mobile,
       Uniscan Web Mobile, ID Parsing SDK, and M-310s Handheld ID Reader
10         with Veriscan that embody or use the inventions claimed in the
       [Patents-in-Suit].  For example, by a letter dated December 30, 2014 (that
11         IDScan acknowledged on January 7, 2015 having received), Intellicheck
       Mobilisa notified IDScan that its products, and the use of its products by
12         any entity, infringe claims of the [Patents-in-Suit].  That letter identified
       specific claims infringed by these products and included a claim chart with
13         examples of such infringement.  By a letter dated February 12, 2015,
       counsel for IDScan confirmed that Intellicheck Mobilisa's letter "informed
14         our client of a possible infringement of patents owned by . . . Intellicheck
       Mobilisa, Inc."  IDScan's letter further stated that IDScan was aware that,
15         "in early 2009, . . . Intellicheck . . . contact[ed] my client's customers . . .
       alleging infringement[.]"  IDScan was therefore aware of its customers'
16         infringement prior to, and entirely independent of, Intellicheck Mobilisa's
       letter. Despite learning of this infringement from at least two different
17         sources, IDScan (1) continued to make, sell, and offer for sale these
       products to its customers, at least by continuing to sell and offer to sell such
18         products on its website and on other websites such as Amazon.com, and (2)
       continued to provide manuals and instructions with its products and/or on
19         its website instructing customers to operate those products to practice the
       claimed invention, all of which demonstrates that IDScan intends for its
20         customers to infringe.   Defendant therefore had knowledge of its
       customers' infringement of, and specifically intended its customers to
21         infringe, the [Patents-in-Suit].

22   (Am. Compl. ¶¶ 13, 22, 31, 40, 49 (alternations within quotes in original).)

ORDER- 3

1        With respect to its contributory infringement claims, Intellicheck alleges,

2        Defendant has been and is continuing to contributorily infringe the
3        [Patents-in-Suit] by selling or offering to sell Veriscan Online, Uniscan
         Mobile, Uniscan Web Mobile, ID Parsing SDK, and M-310s Handheld ID
4        Reader with Veriscan, knowing them to be especially made or especially
         adapted for practicing the invention of the [Patents-in-Suit] and not a staple
5        article or commodity of commerce suitable for substantial non-infringing
         use.  For example, IDScan provides software, hardware, and/or instructions
6        enabling a customer to use the products to read, analyze, and verify
         encoded data in magnetic stripes and barcodes on government-issued IDs,
7        thereby infringing claims of the [Patents-in-Suit].  That software and
         hardware, and those instructions, are especially made or especially adapted
8        for reading, analyzing, and verifying encoded data in magnetic stripes and
         barcodes on government-issued IDs, and are therefore not staple articles or
9        commodities of commerce suitable for substantial non-infringing use.
         IDScan had knowledge of the [Patents-in-Suit] and the fact that its products
10       are especially made or especially adapted for use in an infringement of the
         [Patents-in-Suit].  For example, by a letter dated December 30, 2014 (that
11       IDScan acknowledged on January 7, 2015 having received), Intellicheck
         Mobilisa notified IDScan that, by selling or offering to sell that software
12       and hardware, and by providing manuals and instructions with its products
         and on its website instructing customers to utilize the software and
13       hardware to practice the claimed invention, IDScan customers infringe
         claims of the [Patents-in-Suit].  That letter identified specific claims
14       infringed by these products and included a claim chart with examples of
         such infringement.  By a letter dated February 12, 2015, counsel for IDScan
15       confirmed that Intellicheck Mobilisa's letter "informed our client of a
         possible infringement of patents owned by . . . Intellicheck Mobilisa, Inc."
16       IDScan's letter further stated that IDScan was aware that, "in early 2009,
         . . . Intellicheck . . . contact[ed] my client's customers . . . alleging
17       infringement[.]"[2]  IDScan's letter also stated that its "products are software
         and mobile applications that can be used in conjunction with third-party

18       _____

19       [2] The indirect infringement allegations regarding the '751 Patent differ slightly from the
         allegations concerning the other Patents-in-Suit.  The '751 Patent issued in March 2011, after
         Intellicheck allegedly contacted IDScan's customers claiming infringement in 2009.  (*See* Am.
20       Compl. ¶¶ 46, 49-50.)  Therefore, in the indirect infringement allegations pertaining to the '751
         Patent, Intellicheck describes IDScan's February 12, 2015, letter as acknowledging that in early
21       2009 Intellicheck contacted IDScan's customers "'alleging infringement' of patents related to the
         '751 Patent."  (*Id.* ¶¶ 49-50.)  Because the court does not rely on IDScan's knowledge of the
22       2009 allegations in deciding this motion, *see infra* Part III, the court does not find this difference
         in the allegations relevant.

ORDER- 4

1

scanning products, including but not limited to 3M, Honeywell and others[,]" thereby confirming that IDScan's software is a component of an infringing apparatus and method for practicing the claimed invention, and acknowledging IDScan's knowledge of the same.

2

3

(*Id.* ¶¶ 14, 23, 32, 41, 50 (alternations within quotes in original) (footnote added).)

4

IDScan argues that Intellicheck alleges insufficient facts to plausibly plead its

5

claims for induced and contributory infringement. (*See* Mot. at 2-3.) As such, IDScan

6

requests that the court dismiss those claims under Federal Rule of Civil Procedure

7

12(b)(6). (*See id.*) Because Intellicheck has already amended its complaint once in

8

response to a motion to dismiss the indirect infringement claims, IDScan contends that

9

further amendment would be futile and dismissal should therefore be with prejudice.

10

(*See id.* at 11-12.) IDScan's motion to dismiss is now before the court.

11

### III.   DISCUSSION

12

**A.   Legal Standard**

13

"To survive a motion to dismiss, a complaint must contain sufficient factual

14

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

15

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

16

570 (2007)); *see al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). "A claim has

17

facial plausibility when the plaintiff pleads factual content that allows the court to draw

18

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

19

556 U.S. at 678. Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable

20

legal theory or the absence of sufficient facts alleged under a cognizable legal theory.

21

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering

22

ORDER- 5

1  a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light

2  most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney,*

3  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as

4  true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v.*

5  *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661, 663 (9th Cir. 1998).  "Mere conclusory

6  statements," however, "are not entitled to the presumption of truth."  *Chavez v. United*

7  *States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

8  **B.      Induced Infringement Claims**

9        To state a claim for induced infringement, the plaintiff must plead "facts plausibly

10  showing that [the defendant] specifically intended [its] customers to infringe the . . .

11  patent and knew that the customer's acts constituted infringement.  This does not mean,

12  however, that [the plaintiff] must prove its case at the pleading stage."  *In re Bill of*

13  *Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir.

14  2012); *see* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall

15  be liable as an infringer.").  The plaintiff must also plausibly plead that direct

16  infringement has occurred.  *See id.* at 1333-36.  Intellicheck's amended complaint meets

17  this standard.

18        First, Intellicheck plausibly pleads that IDScan knew of the Patents-in-Suit and

19  that its customers were infringing those patents.  Intellicheck alleges that in a December

20  30, 2014, letter it informed IDScan that several of IDScan's products "embody or use the

21  inventions claimed in" the Patents-in-Suit, and that IDScan's "products and the use of its

22  products by any entity, infringe the claims of" the Patents-in-Suit.  (Am. Compl. ¶¶ 13,

1   22, 31, 40, 49; *see also id.* ¶¶ 12, 21, 30, 39, 48 ("[IDScan's] products . . . embody or use

2   the inventions described claim in the [Patents-in-Suit].  For example, these products read,

3   analyze and verify encoded data in magnetic stripes and barcodes on government-issued

4   IDs, and thereby infringe one or more claims of the [Patents-in-Suit].").)  Intellicheck

5   further alleges that its letter "identified specific claims infringed by these products and

6   included a claim chart with examples of such infringement."  (*Id.* ¶¶ 13, 22, 31, 40, 49.)

7   From these allegations, the court can draw the reasonable inference that IDScan knew its

8   customers were infringing the Patents-in-Suit.  *See Iqbal*, 556 U.S. at 678.

9       IDScan counters that Intellicheck's allegations "at best, . . . only show that

10  IDScan.net was aware of *possible* infringement—not actual infringement—by its

11  customers."  (Mot. at 8-9 (emphasis in original).)  According to IDScan, "[k]nowledge

12  of possible infringement is not sufficient to state a claim for induced infringement."  (*Id.*

13  at 9 (citing *Warner-Lambert v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003)).)

14  IDScan's argument fails.  A plaintiff may sufficiently plead the knowledge required for

15  induced infringement by alleging that it sent a letter to the defendants informing them of

16  the patent and that their customers are infringing the patent by using their products.  *See*

17  *Pagemelding, Inc. v. ESPN, Inc.*, No. C 11-06263 WHA, 2012 WL 228201, at *2 (N.D.

18  Cal. June 18, 2012); *U.S. Water Servs., Inc. v. Novozymes A/S*, 25 F. Supp. 3d 1088,

19  1093-94 (W.D. Wisc. 2014); *Cascades Branding Innovation, LLC v. Walgreen Co.*, No.

20  11 C 2519, 2012 WL 1570774, at *3 (N.D. Ill. May 3, 2012).  Intellicheck need not

21  allege that IDScan acknowledged infringement was occurring.  Rather, drawing all

22  reasonable inferences in Intellicheck's favor, the court can infer from Intellicheck's

ORDER- 7

1    allegations regarding the December 20, 2014, letter that IDScan knew its customers were

2    infringing the Patents-in-Suit.[3]  *See Iqbal*, 556 U.S. at 678.

3            Second, Intellicheck plausibly pleads that direct infringement occurred.

4    Intellicheck alleges that IDScan's products "embody the inventions claimed in" the

5    Patents-in-Suit, and that those products and their "use by any entity infringe the claims

6    of" the Patents-in-Suit.  (Am. Compl. ¶¶ 12-13, 21-22, 30-31, 39-40, 48-49.)  Intellicheck

7    also alleges that IDScan sells the infringing products to customers and provides manual

8    and instructions that explain to the customers how to "operate those products to practice

9    the claimed invention."  (*Id.* ¶¶ 13, 22, 31, 40, 49.)  According to Intellicheck, IDScan's

10   products infringe the Patents-in-Suit insofar as those products "read, analyze, and verify

11   encoded data in magnetic stripes and barcodes on government-issued IDs."  (*Id.* ¶¶ 12,

12   21, 30, 39, 48.)  These allegations, viewed in the light most favorable to Intellicheck,

13   allow the court to reasonably infer that direct infringement has occurred.  *See Iqbal*, 556

14   U.S. at 678.

15           IDScan contends that the amended complaint fails because it provides no detail

16   "describing how the accused products infringe the claims of the Patents-in-Suit or how

17   IDScan.net's customers actually use the accused products in an infringing manner."

18

19       [3] IDScan's reliance on *Warner-Lambert* is misplaced.  (*See* Mot. at 8-9.)  Although the
     Federal Circuit stated in *Warner-Lambert* that "mere knowledge of possible infringement by
     others does not amount to inducement," 316 F.3d at 1364, that statement does not mean that
20   plaintiffs must prove their case at the pleading stage by establishing that the defendant must have
     known its customers' conduct constituted infringement.  In fact, the Federal Circuit was not even
21   discussing the knowledge prong of induced infringement when it made that statement.  *See id.*
     The Federal Circuit was simply making the point that a defendant's knowledge that its customers
     are infringing is insufficient by itself—the defendant must also intend for its customers to
22   infringe and take action to induce their infringement.  *See id.*

1   (Mot. at 8.)  However, IDScan misconstrues the pleading requirements for direct

2   infringement.  As the Federal Circuit explained in *In re Bill of Lading*, the court should

3   judge direct infringement allegations by whether they meet the standard set forth in Form

4   18 of the Federal Rules of Civil Procedure, not by whether they satisfy the Supreme

5   Court's *Twombly* and *Iqbal* jurisprudence.  681 F.3d at 1334.  Form 18 requires, among

6   other things not relevant here, an allegation that the entity in question "has been

7   infringing the patent by 'making, selling, and using [the device] embodying the patent.'"

8   *Id.* (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007))

9   (alterations in original).  "Form 18 and the Federal Rules of Civil Procedure do not

10  require a plaintiff to plead facts establishing that each element of an asserted claim is met.

11  Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *Id.*

12  at 1335 (citing *McZeal*, 501 F.3d at 1357).  Intellicheck's amended complaint meets the

13  Form 18 standard.  *See id.* at 1334-35.

14          Finally, Intellicheck plausibly pleads that IDScan intended for its customers to

15  infringe and took affirmative steps to induce infringement.  Intellicheck alleges that it

16  informed IDScan that IDScan's customers were infringing, explained that the use

17  IDScan's products by any entity would constitute infringement, and described how

18  IDScan's products infringe the Patents-in-Suit.  (*See* Am. Compl. ¶¶ 12-13, 21-22, 30-31,

19  39-40, 48-49.)  Intellicheck further alleges that even after receiving this information

20  IDScan continued to make the accused products, sell those products to its customers, and

21  provide instructions along with its products that explained how to use the products to

22  practice the claimed invention.  (*See id.* ¶¶ 13-14, 22-23, 31-32, 40-41, 49-50.)  The court

ORDER- 9

1  can reasonably infer from these allegations that IDScan intended for its customers to

2  infringe and took affirmative steps to induce such infringement. *See Iqbal*, 556 U.S. at

3  678. As such, the court DENIES IDScan's motion to dismiss Intellicheck's induced

4  infringement claims.

5  **C.      Contributory Infringement Claims**

6          "In order to succeed on a claim of contributory infringement, in addition to

7  proving an act of direct infringement, plaintiff must show that defendant knew that the

8  combination for which its components were especially made was both patented and

9  infringing and that defendant's components have no substantial non-infringing uses."

10 *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009) (quoting

11 *Cross Med. Prods., Inc. v. Medtronic Sofamar Danek, Inc.*, 424 F.3d 1293, 1312 (Fed.

12 Cir. 2005)). The court dismisses Intellicheck's contributory infringement claims because

13 Intellicheck has failed to plausibly plead that IDScan's products have no substantial non-

14 infringing uses. *See id.*

15         To forestall this result, Intellicheck argues that a plaintiff can satisfy its burden to

16 plead a lack of substantial non-infringing uses by alleging "that the product's instruction

17 sheets address only infringing uses and/or admissions regarding the intended use of the

18 products." (Resp. at 15 (citing *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d

19 1354, 1363 (Fed. Cir. 2006)).) Even if Intellicheck is correct, however, its amended

20 complaint contains no allegations that meet the described standard. Intellicheck asserts

21 that it "has pleaded that Defendant's instruction sheets . . . instruct customers to use the

22 accused products *exclusively* to read, analyze and verify encoded data . . . in a way that

ORDER- 10

1    infringes the asserted patents." (Mot. at 15 (emphasis added) (citing Am. Compl. ¶¶ 14,

2    23, 32, 41, 50).)  Yet the cited paragraphs of the amended complaint lack any language

3    indicating exclusivity:

4        "IDScan provides software, hardware, and/or instructions enabling a
         customer to use the products to read, analyze, and verify encoded data in
5        magnetic stripes and barcodes on government-issued IDs, thereby
         infringing the claims of the [Patents-in-Suit].  That software and hardware,
6        and those instructions, are especially made or especially adapted for
         reading, analyzing, and verifying encoded data in magnetic strips and
7        barcodes on government-issued IDs, and are therefore not . . . suitable for
         substantial non-infringing use."
8
     (Am. Compl. ¶¶ 14, 23, 32, 41, 50; *see* Mot. at 15-16.)  The court cannot reasonably infer
9
     from the amended complaint's factual allegations that IDScan's products have no
10
     substantial non-infringing uses.  *See Iqbal*, 556 U.S. at 678; *Lucent Techs.*, 580 F.3d at
11
     1320.  Accordingly, the court GRANTS IDScan's motion to dismiss Intellicheck's
12
     contributory infringement claims.
13
     **D.      Leave to Amend**
14
             As a general rule, when a court grants a motion to dismiss, the court should
15
     dismiss the complaint with leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*,
16
     316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  The policy
17
     favoring amendment is to be applied with "extreme liberality."  *Id.* at 1051.  In
18
     determining whether dismissal without leave to amend is appropriate, courts consider
19
     such factors as undue delay, bad faith or dilatory motive on the part of the movant,
20
     repeated failure to cure deficiencies by amendments previously allowed, undue prejudice
21

22

1    to the opposing party by virtue of allowance of the amendment, and futility of

2    amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

3          IDScan argues that leave to amend is inappropriate because Intellicheck has

4    already amended its complaint once in response to a motion to dismiss the indirect

5    infringement claims and another opportunity to amend would therefore be futile. (*See*

6    Mot. at 11-12.) The court disagrees. There is no evidence of undue delay, bad faith, or

7    dilatory motive on Intellicheck's part, nor is there any indication that IDScan will suffer

8    prejudice if the court permits amendment. *See Foman*, 371 U.S. at 182. Further,

9    although Intellicheck has previously amended its complaint, it amended as of right and

10   without any indication from the court that the original complaint was defective. *See id.*;

11   *supra* Part II. Finally, it is not clear that the deficiencies in the complaint could not be

12   cured by amendment. *See Foman*, 371 U.S. at 182. A substantial period of time has

13   passed since IDScan filed the instant motion, and Intellicheck may well have acquired

14   additional facts that support its contributory infringement claims. *See supra* Part II. The

15   court therefore GRANTS Intellicheck leave to amend its contributory infringement

16   claims within ten days of the date of this order.

17   //

18   //

19   //

20   //

21   //

22   //

ORDER- 12

1

### IV.   CONCLUSION

2      For the foregoing reasons, the court GRANTS in part and DENIES in part

3  IDScan's motion to partially dismiss the amended complaint (Dkt. # 21).  The court

4  DISMISSES Intellicheck's contributory infringement claims without prejudice and

5  GRANTS Intellicheck leave to amend those claims within ten days of the date of this

6  order.  The court DENIES all other aspects of IDScan's motion.

7      Dated this 20th day of January, 2016.

8

9

10  _____
   JAMES L. ROBART
11  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 13